## Commonwealth v. Miles.

Argued April 6, 1973, before Judges Mencer, Rogers and Blatt, sitting as a panel of three.

*John M. Yarema,* with him *Martin H. Philip,* for appellant.

*Stuart A. Liner,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, May 11, 1973:

On July 25, 1971, on Route 329 in East Allen Township, Northampton County, John S. Miles (Miles) was apprehended by a Pennsylvania State Policeman for operating a motor vehicle while under the influence of intoxicating liquor, a violation of Section 1037 of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §1037, and, after being so charged, refused to submit to a breathalyzer test as provided in the so-called "Implied Consent Law," Section 624.1(a) of the Code, 75 P.S. §624.1(a).[1]  Having received a report of

---

[1] This section provides, *inter alia*: "Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the

this refusal from the district justice involved, the Secretary of Transportation, under Section 624.1(a), suspended Miles' operator's license for six months. Miles appealed to the Court of Common Pleas of Northampton County which, after a de novo hearing, denied the appeal. This appeal by Miles followed.

To explain the circumstances leading to and surrounding Miles' refusal to submit to the breathalyzer test, we adopt the following material findings of fact made by the court below:

"1. On July 25, 1971, while operating his motor vehicle, Defendant was involved in an automobile accident on Pa. Route 329, East Allen Township.

. . . .

"4. Approximately 15 minutes after arriving at the scene, Trooper Tretter asked a group of bystanders who the driver of the other vehicle was, at which time John S. Miles, Defendant herein, came forward and stated that he was.

. . . .

"6. During the investigation, Trooper Tretter had ample opportunity to observe Defendant's demeanor. In this regard, Trooper Tretter testified that Defendant's eyes appeared bloodshot, that his speech was slurred, that he had difficulty maintaining his balance while standing and walking, and that he had a strong odor of intoxicating beverage on his breath.

"7. Not actually having seen Defendant operating his vehicle, but based upon his observations of Defend-

influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons."

ant after the accident had occurred, and Defendant's admission that he had been operating the vehicle, Trooper Tretter, without a warrant, placed Defendant under arrest pursuant to [Section 1037] for driving under the influence of intoxicating beverages.

"8. After administering the Miranda[2] warnings, Trooper Tretter requested that Defendant submit to an approved chemical test of his breath pursuant to [Section 624.1(a)].

"9. Defendant refused to submit to the test at that time and again upon being asked at his arraignment.

. . . .

"12. The testimony of Trooper Tretter was sufficient to convince this Court, by a preponderance of the evidence, that the Defendant, prior to the accident, was operating his vehicle while under the influence of intoxicating beverages." (Footnote added.)

Miles' basis for appeal below, as here, is the contention that the Secretary may not suspend his operator's license for his refusal to submit to a breathalyzer test upon request because the request was not made incident to a lawful arrest. More specifically, Miles contends that, since the arresting officer did not actually see him operate his motor vehicle on the night of the accident and also did not obtain a warrant for his arrest, the arrest was unlawful and no valid suspension can result therefrom.

Pointing to the words "placed under arrest" in Section 624.1(a), Miles relies on Sections 1204[3] and 1214[4]

---

2 *Miranda v. State of Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3 Section 1204(a) states: "Peace officers, when in uniform and displaying a badge or other sign of authority, may arrest, upon view, any person violating any of the provisions of this act, where the offense is designated a felony or a misdemeanor, or in cases causing or contributing to an accident resulting in injury or death to any person, and in all cases of arrest such peace officers shall

of The Vehicle Code, 75 P.S. §§1204, 1214, Section 712 of the Administrative Code of 1929,[5] 71 P.S. §252, Pa. R. Crim. P. 102(3),[6] and that general rule of law amply stated by *Commonwealth v. Pincavitch*, 206 Pa. Superior Ct. 539, 544, 214 A. 2d 280, 282 (1965) : "The general rule is, 'A peace officer may, without a warrant, arrest for a felony or for a misdemeanor committed in his presence although the right to arrest for a misdemeanor, unless conferred by statute, is restricted to misdemeanors amounting to a breach of the peace.' 6 C.J.S. Arrest §6(a). This is extended to such cases where probable cause exists for believing a person has committed a felony. Commonwealth v. Bosurgi, 411 Pa. 56, 190 A. 2d 304 (1963), cert. denied, 375 U.S. 910, 84 S. Ct.

---

forthwith make and file with the magistrate, before whom the arrested person is taken, an information setting forth in detail the offense, and at once furnish a copy thereof to the person arrested."

[4] The pertinent portion of Section 1214 is as follows: "Such employes of the Commonwealth as are designated as Pennsylvania State Policemen are hereby declared to be peace officers, and are hereby given police power and authority throughout the Commonwealth in addition to any other power or authority conferred by law to arrest on view, on Sunday or any other day, when in uniform, without writ, rule, order, or process, any person violating any of the provisions of this act."

[5] This section provides, *inter alia*: "The various members of the Pennsylvania State Police are hereby authorized and empowered:

"(a) To make arrests, without warrant, for all violations of the law, including laws regulating the use of the highways, which they may witness, and to serve and execute warrants issued by the proper local authorities. They shall have all the powers and prerogatives conferred by law upon members of the police force of cities of the first class, and upon constables of the Commonwealth . . . ."

[6] Rule 102 provides, *inter alia*: "Criminal proceedings may be instituted by:

. . . .

"3. An arrest without a warrant when the offense is a felony or misdemeanor committed in the presence of the arresting person."

204, 11 L. Ed. 2d 149; but we find no authority that justifies an arrest without a warrant for a misdemeanor or summary offense committed beyond the presence of the arresting officer in the absence of a statute giving that right."

Generally, an arrest may be accomplished by acts of the police that indicate their intention to take the person into custody and subject him to their control. No formal declaration of arrest or the application of physical force is required. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963); *Commonwealth v. Friel,* 211 Pa. Superior Ct. 11, 234 A. 2d 22 (1967).

There are two common definitions of "arrest." One is the lawful taking of a person into custody in order that he may be forthcoming to answer for the commission of an alleged crime. *See Commonwealth v. Dorsey,* 212 Pa. Superior Ct. 339, 243 A. 2d 176 (1968). The other view is that an arrest is any act that indicates an intention to take a person into custody and that subjects him to the actual control and will of the person making the arrest. *Commonwealth v. Bosurgi, supra.* Thus a deprivation or restraint of a person's liberty, whether or not it culminates in criminal charges being filed and results in a conviction or an acquittal, is an arrest.

Here Miles was completely in the custody of and under the actual control of a Pennsylvania State Policeman.[7] Miles submitted to the restraint implicit in an arrest and accompanied the trooper to the office of the justice of the peace where the trooper swore to and signed the complaint formally charging Miles with operating a motor vehicle while under the influence of

---

[7] Notes of testimony. Direct examination of Trooper James F. Tretter of the Pennsylvania State Police: "Q. After you examined his registration, his license, what happened then? A. I asked—I placed him under arrest and put him in the back of the police car."

intoxicating liquor.[8]   Thus Miles was placed under arrest before the charge was made.

We think the words "placed under arrest" in Section 624.1(a) fall within the broader second view above and refer to a *factual situation* (i.e., whether the defendant in fact was deprived or restrained of his liberty) which is a prerequisite, along with being "charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor," to the request to submit to a chemical test.

Had the Legislature used more explicit words in Section 624.1(a), such as "a lawful arrest without warrant," as, for example, it did in Section 314 of the Penal Code of 1939, Act of June 24, 1939, P. L. 872, as amended, 18 P.S. §4314, then the first definition above would apply to Section 624.1(a) arrests.   There would be needed a lawful arrest, and not merely a deprivation or restraint of a person's liberty.

We are here dealing with the authority to request a person to submit to a chemical test and not, as was the Superior Court in *Commonwealth v. Reeves*, 223 Pa. Superior Ct. 51, 297 A. 2d 142 (1972), with the admission into evidence of the result of such a test.   *See Commonwealth v. Brown*,     Pa. Superior Ct.     , 302 A. 2d 475 (1973).   The Legislature, in Section 624.1(a), stated that the breathalyzer test is to be administered

---

[8] Notes of testimony.  Cross-examination of Trooper James F. Tretter of the Pennsylvania State Police: "Q. Then I believe the next thing you did was you took him to a J. P.  A. Yes.  After he contacted his attorney, we went to Justice of the Peace Frey.  Q. Now, what happened there at Justice of the Peace Frey's? A. They— the Justice of the Peace typed up the complaint and I swore to the complaint and signed it and then I asked Mr. Miles again if he would consent to the approved chemical test and he said no.  Q. Now, what was the complaint?  What did the complaint charge him with?  A. Driving while under the influence of an intoxicating beverage."

at the direction of a police officer "having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor." This is not the same standard as applied in *Commonwealth v. Reeves, supra,* to determine whether a police officer may make a warrantless arrest for a misdemeanor.

Therefore, we conclude that *if, in fact,* a person is (1) placed under arrest and (2) charged with the operation of a motor vehicle while under the influence of intoxicating liquor and (3) is requested to submit to a breathalyzer test and (4) refuses to do so, the Secretary may suspend that person's operator's license. It is not a question of the lawfulness of the arrest or the admissibility into evidence of the results of the test, but rather the refusal to submit to the test at a time when Section 624.1(a) is applicable. It is a factual determination not a legal determination.

Here it is admitted that factually Miles was placed under arrest, charged with a Section 1037 offense, requested to submit to the breathalyzer test and refused. Such being the case, there is no legal defense available to him.

Order affirmed.