Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant, *v.* Raymond A. Kelly, Appellee.

Submitted on briefs, February 6, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR. and MENCER, sitting as a panel of three.

*John L. Heaton,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellant.

*Raymond A. Kelly,* appellee, for himself.

OPINION BY JUDGE CRUMLISH, JR., April 11, 1975:

This appeal involving unique factual nuances, is from an order of the Court of Common Pleas of Chester County which sustained the appeal of Raymond A. Kelly (Kelly) whose operator's license was suspended for six (6) months by the Secretary of the Department of Transportation because he refused to submit to a breathalyzer test under Section 624.1 of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended,* 75 P.S. §624.1.

On May 17, 1971, Kelly was arrested in the Borough of West Chester for driving under the influence of intoxicating liquor in violation of Section 1037 of The Vehicle Code, 75 P.S. §1037. That night, the arresting officers observed Kelly suddenly career his automobile onto a sidewalk and back into the street. The officers observed

Kelly walking unsteadily and with a pronounced bouquet of alcohol on his breath. Kelly was immediately placed under arrest and taken to the police station where he was asked to submit to a Mobat breathalyzer test. Although warned of the effect of a refusal, Kelly refused to submit to the test because he was out of breath due to the emotional excitement of the arrest. When reported to him, the Secretary suspended Kelly's license for six (6) months, effective November 2, 1971, under the authority of Section 624.1(a) of The Vehicle Code, 75 P.S. §624.1(a). An immediate appeal followed and the lower court granted a supersedeas on November 11, 1971. After a series of delays not explained on this record, a second trial judge heard the case de novo as the original transcript of the prior hearing could not be located. On June 4, 1974, the lower court entered an order reversing the suspension on the ground that the Commonwealth had failed to prove that Kelly was physically able to submit to a breathalyzer test. It reasoned that he had not *"refuse[d]"* to submit to a chemical test within the meaning of Section 624.1.

The Commonwealth has appealed this judgment to us, and we reverse.

Section 624.1 provides in pertinent part:

"(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving under the influence of intoxicating liquor. . . . If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of in-

toxicating liquor *and is thereafter requested to submit to a chemical test and refuses to do so,* the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. . . ."

"(f) *If for any reason a person is physically unable to supply enough breath to complete a chemical test* a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evidence." (Emphasis supplied.)

This Court has held that in order to sustain a suspension under Section 624.1 the Commonwealth has the burden of proving that the defendant was

1) placed under arrest upon the charge of driving while intoxicated;

2) was requested to submit to a breathalyzer test; and

3) refused to do so.

*Commonwealth v. Clawson,* 9 Pa. Commonwealth Ct. 87, 305 A.2d 732 (1973); *Commonwealth v. Miles,* 8 Pa. Commonwealth Ct. 544, 304 A.2d 704 (1973). In the instant case, the record clearly establishes each of these elements. A question to which we have not previously addressed ourselves, however, is whether the Commonwealth, after proving an objective refusal, must also establish that the defendant was physically able to take a breathalyzer test. When subsection (f) of Section 624.1 is read in conjunction with subsection (a), it becomes apparent that the Legislature intended to differentiate between a physical inability to submit to a breathalyzer test and a "refusal" to do so. *See Commonwealth v. Gallagher,* 94 Montg. Ct. L.R. 139 (1971). We must disagree with the lower court, however, that the Commonwealth

must prove a defendant's physical capacity to submit to a breathalyzer test in order to establish a "refusal." To so hold would effectively negate the purpose of Section 624.1. We hold that after the Commonwealth has proven a refusal to submit to a breathalyzer test, the burden shifts to the defendant to prove by competent evidence that he was physically unable to submit to the test.

We were faced with a similar problem in *Commonwealth v. Passarella*, 7 Pa. Commonwealth Ct. 584, 300 A.2d 844 (1973). There the lower court sustained an appeal from a Section 624.1 suspension upon a finding that a concussion suffered by the defendant in the accident preceding his arrest "persisted for several hours, and which rendered [him] incapable of making conscious, knowing decisions and replies to questions. . . . There being no wilful refusal to undergo a chemical test in this case, it follows that the license suspension was improper." 7 Pa. Commonwealth Ct. at 586, 300 A.2d at 845-846. Although not expressly addressing the issue of burden of proof, this Court, by Judge MENCER, in reversing stated:

"We must conclude, after a careful examination of the record, that the evidence presented does not support the conclusion that appellee suffered from a concussion and was therefore incapable of making a conscious, knowing refusal, to either chemical test. On the contrary, it would seem that appellee had sufficient control of his faculties to be able to refuse unequivocally both chemical tests and to refuse to answer questions for a routine report.

"No medical doctor testified that appellee suffered an actual concussion, no medical evidence was introduced as to what effects such a concussion would have had on appellee after he was released from the hospital. Testimony as to appellee's medical 'record' were of doubtful validity and merely indicated that a 'possible' concussion occurred." 7 Pa. Commonwealth Ct. at 587, 300 A.2d at 846.

In each of the cases sustaining a refusal on the basis of a physical inability to submit to a breathalyzer test, there was uncontradicted evidence of the appellant's physical disability, and the good faith of the appellant's effort to submit to the test was not questioned. In *Commonwealth v. Gallagher, supra,* the appellant, who suffered injuries to his upper lip in the accident, blew up the balloon on his first attempt, but the test failed due to a defect in the Mobat apparatus. The Court upheld his refusal to submit to a second test as his injuries made it increasingly difficult to take the test, and his physical disability was confirmed by an attending physician and two witnesses. Similarly, in *Application of Scott,* 5 App. Div. 859, 171 N.Y.S. 2d 210 (1958), appellant attempted to blow up the balloon, but his false teeth in their discomportment effectively prevented him from completing the test. In *Burson v. Collier,* 226 Ga. 427, 175 S.E. 2d 660 (1970), and *Department of Public Safety v. Orr,* 122 Ga. App. 439, 177 S.E. 2d 165 (1970), appellants' emphysema complication constricted their air supply in two tries, successfully aborting the chemical test. A simple declaration by a subject that he is physically unable to do a breath test absent medical proof of his incapacity, however, will not justify his refusal to meet the statutory demands of his privilege. *See Lee v. State,* 187 Kan. 566, 358 P. 2d 765 (1961). Here, Kelly did not even attempt to complete the breathalyzer test. He offered no medical evidence to support his suggested physical incapacity, but in derogation of his defense admitted that he suffered no related disability. The court below judiciously, but erroneously, accepted Kelly's testimony that his temporary emotional insecurity justified the selfserving conclusion that he was physically unable to meet the conditions of the test. We hold that this evidence was insufficient to sustain his burden of proving physical incapacity, and so, as a matter of law, having failed to hurdle the burden, he must accept the suspension ordained by Section 624.1.

Since Kelly by supersedeas retained his operator's license during the interim of jurisprudential delay, his suspension at this point is neither inequitable nor beyond the power of this Court to order.

Consistent with the foregoing, we enter the following

ORDER

AND NOW, April 11, 1975, the order of the Court of Common Pleas of Chester County is reversed, and the Secretary of Transportation is directed to reinstate the six (6) month suspension of Raymond A. Kelly's operator's license within thirty days of this Order.