Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Daniel R. Tantlinger, Appellee.

Argued March 11, 1977, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

John L. *Heaton,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*Charles C. Gentile,* for appellee.

OPINION BY JUDGE ROGERS, April 11, 1977:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Fayette County made after hearing de novo, reversing the Department of Transportation's six-month suspension of Daniel Tantlinger's operator's license for failure to submit to a breathalizer test as required under Section 624.1(a) of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended,* 75 P.S. §624.1(a).

Section 624.1 provides in pertinent part:

(a)   Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. . . . If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a *chemical test and re-*

*fuses to do so,* the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. . . . (Emphasis added.)

This Court has frequently held that in order to sustain a suspension under Section 624.1, the Commonwealth must prove that the defendant was (1) placed under arrest upon the charge of driving while intoxicated; (2) was requested to submit to a breathalizer test; and (3) refused to do so. *See* for example, *Bureau of Traffic Safety v. Kelly,* 18 Pa. Commonwealth Ct. 490, 493, 335 A.2d 882, 884 (1975). The presence or absence of any of the above elements is a factual determination, not a legal one. *Commonwealth v. Miles,* 8 Pa. Commonwealth Ct. 544, 550, 304 A.2d 704 (1973). The Commonwealth's burden of proving the third element is therefore satisfied when it establishes that an objective refusal occurred. Thereafter, the burden is upon the defendant to prove by competent evidence that he was physically unable to take the test. *Bureau of Traffic Safety v. Kelly, supra.*

Mr. Tantlinger, while driving his automobile alone at about 1:20 o'clock A.M. on December 27, 1974, lost control of his vehicle, which overturned in the public road. The police officer who investigated found a partially consumed pint of whiskey at the scene and noticed the smell of alcoholic drink on Mr. Tantlinger's person. The officer went to the hospital to which Mr. Tantlinger was taken and there asked Mr. Tantlinger to take a breathalizer test. Mr. Tantlinger consented to take the test and the police officer sent for the breathalizer apparatus. At this point in the history the evidence becomes conflicting. The police officer testified that when the apparatus arrived Mr. Tantlinger refused to take the test. A magistrate, whom the police officer later called to the scene, testified that Mr. Tantlinger refused to take the test in his,

the magistrate's presence. Mr. Tantlinger's brother testified for Mr. Tantlinger that he, the brother, told the police officer at the hospital that he did not want his brother to take the breathalizer test until he had received medical treatment. Mr. Tantlinger testified that he consented to the test and that he at no time refused to take the test.

The trial judge, who reversed the Department of Transportation's order of six months' suspension, in an order and opinion noted that Mr. Tantlinger was injured in the accident, that the police officer stated that Mr. Tantlinger was in a "lesser state of shock" at the roadside scene of the accident, that the magistrate in answer to the question posed by the trial judge stated that he was unable to say whether Mr. Tantlinger was able to understand the request that he take the test and that Mr. Tantlinger was indeed injured. The trial judge may have concluded that Mr. Tantlinger's refusal to take the test was not, to use the trial judge's word, "willful." The opinion ends, however, with the finding "that the appellant did not refuse to take the intoximeter test." We are therefore unsure whether the trial judge accepted Mr. Tantlinger's testimony that he never refused the test and disbelieved that of the Commonwealth's witnesses that he had refused; or whether the trial judge believed that Mr. Tantlinger had in fact refused but that the refusal was without effect because not willful. We will reverse and remand. In doing so we are impelled to say, should the trial judge find that Mr. Tantlinger in fact refused to take the test, that the effectiveness of the refusal depends on whether the refusal was a conscious and knowing act. *Commonwealth v. Passarella*, 7 Pa. Commonwealth Ct. 584, 300 A.2d 844 (1973), must be consulted on this point. There the operator testified that he had no recollection of refusing to take the test and produced testimony about

hospital records showing that he had suffered a possible concussion. The trial judge concluded that there was no willful refusal because the hospital records convinced him that the operator was incapable of making a conscious, knowing decision. We reviewed the record and reversed, noting that no doctor testified that the driver had suffered a concussion; that no medical evidence was adduced as to the effect of a concussion at the time of refusal; and that the testimony about the medical records was of doubtful validity. We decided that the evidence did not support the trial judge's conclusion that the refusal was not willful, knowing and conscious, and reversed. We are compelled to make the same conclusion on this record. Mr. Tantlinger did not say he did not remember refusing the test; he testified that he at all times consented; there is no medical evidence of the extent of Mr. Tantlinger's injuries or of their effect on his capacity to make a willful, knowing and conscious decision to refuse to take the test; and the testimony of the police officer that Mr. Tantlinger seemed to be in "lesser shock" at the scene of the accident and the magistrate's inability to say that Mr. Tantlinger knew what he was doing when he refused the test do not support a conclusion that the refusal, if made, was not knowing and conscious.

Hence, our remand is so that the trial judge may make the finding either that Mr. Tantlinger in fact refused the test as the police officer and the magistrate said, or that he did not refuse but at all times consented to take the test as he testified.

### Order

And Now, this 11th day of April, 1977, the order of the Court of Common Pleas of Fayette County made June 24, 1974 is reversed and the record is remanded to the trial court for the finding required by our opinion herein.