Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Daniel L. Quinlan, Jr., Appellee.

215

Argued September 14, 1979, before Judges CRUM-
LISH, JR., WILKINSON, JR. and CRAIG, sitting as a panel
of three.

*Harold H. Cramer*, Assistant Attorney General,
with him *Robert W. Cunliffe*, Deputy Attorney Gen-
eral, and *Gerald Gornish*, Acting Attorney General,
for appellant.

*Paul C. Vangrossi*, with him *Joseph J. Hylan*, and
*Vangrossi & Recchuiti*, for appellee.

OPINION BY JUDGE CRAIG, November 8, 1979:

This is an appeal from a motor vehicle operator's
license suspension, for refusal to take a breathalyzer
test in violation of Section 1547 of the Vehicle Code,
75 Pa. C.S. §1547. The lower court refused to admit
testimony from a police officer in response to initial
general questions by Commonwealth counsel concern-
ing who was involved and what happened on Novem-
ber 4, 1977, the date of the alleged refusal of the
appellee-driver to take the breathalyzer test, allegedly
following an accident. When Commonwealth counsel
claimed inability to proceed because of the exclusion
of the testimony, the court below sustained the appeal,
and the Commonwealth appeals here.

Counsel for the driver raiséd in the court below a question concerning the constitutionality, as a matter of procedural due process, of Section 1550 of the Vehicle Code, 75 Pa. C.S. §1550, which provides for appeals to court from drivers' license suspensions, supersedeas until "final determination of the matter," and the hearing at which the court is to "determine whether the petitioner is in fact the person whose operating privilege is subject to the recall, suspension, cancellation or revocation." Appellee interprets the last quoted language as prohibiting inquiry into the merits of the breathalyzer refusal and suspension and thus denying a driver any due process hearing.

The lower court apparently accepted that interpretation in excluding testimony concerning "what transpired on that date [November 4, 1977] relating to Daniel L. Quinlan, Jr. . . ." and similar questions.[1]

---

[1] The questions put by Commonwealth counsel to the police officer, which were ruled out by the lower court, were as follows:

Q. Would you please tell his Honor and this Court what transpired on that date relating to Daniel L. Quinlan, Jr., who is seated in this Courtroom beside his counsel?

. . . .

Q. Will you tell his Honor and the Court what transpired on that date relative to the petitioner, Daniel L. Quinlan, Jr., who is seated next to his counsel?

. . . .

Q. Officer, will you please describe what happened on the day of November 4th, 1977?

. . . .

Q. Officer, would you please tell this Court what transpired on November 4th, 1977?

. . . .

Q. Officer, was there an accident on November 4th, 1977?

. . . .

Q. And who was involved in this accident?

The objection of driver's counsel was explicitly based on the view that the only thing the officer could testify to was "whether or not this is the individual involved in the suspension proceeding." The

However, in the opinion filed by the lower court, the trial judge, after referring to the wording of Section 1550, proceeded to state:

> The Commonwealth, in this case, failed to prove that which it was required to prove. The Commonwealth produced no evidence that the defendant failed or refused to take a chemical test of his breath. The Commonwealth attempted to prove only that the defendant had been involved in an accident, a matter which is clearly irrelevant to the matter of a suspension. There was no testimony presented as to whether the defendant had refused the chemical test.

Hence, it is clear that the court below, after excluding the testimony on the basis of the narrow interpretation of Section 1550, supported its decision on the basis of an interpretation broader than one confined to merely establishing the identity of the person whose license was suspended.

In stating that the Commonwealth was required to prove that the defendant refused to take a chemical test, the lower court opinion correctly reflects the interpretation of the section which this court has been uniformly following.

To sustain a suspension under former Section 624.1(a) of the Vehicle Code, 75 P.S. §624.1,[2] which provisions were similar to the present Section 1547, the Commonwealth had the burden to prove that: (1) the licensee was placed under arrest, and the arresting

---

court, after sustaining the objection to the third question, indicated his authority for doing so by reference to an annotator's comment which he quoted as stating that "jurisdiction is limited to determining whether the petitioner is, in fact, a person, etc., instead of examining the facts of the case. . . ."

[2] Act of April 29, 1959, P.L. 58, *as amended*, added by Section 1 of the Act of July 28, 1961, P.L. 918, *as amended, formerly* 75 P.S. §624.1(a) repealed by the Act of June 17, 1976, P.L. 162.

officer had reasonable grounds to believe that the licensee had been driving while under the influence of intoxicating liquor; and (2) that the licensee refused to submit to a breathalyzer test, after having been requested to do so. *Department of Transportation, Bureau of Traffic Safety v. Shultz*, 25 Pa. Commonwealth Ct. 598, 360 A.2d 754 (1976); *Commonwealth v. Miles*, 8 Pa. Commonwealth Ct. 544, 304 A.2d 704 (1973).

Additionally, new Section 1547(b)(2) now requires that the driver be warned that a suspension or revocation of license will follow a refusal to submit to a breathalyzer test. *Peppelman v. Commonwealth*, 44 Pa. Commonwealth Ct. 262, 403 A.2d 1041 (1979).

The effect of Section 1550, as evidenced by the lower court's confusion in this case, is ambiguous; we have not found a judicial interpretation of this provision, nor is the legislative intent discernable from any recorded legislative proceeding.

Turning to the Statutory Construction Act of 1972, 1 Pa. C.S. §1922(3) directs that the resolution of statutory ambiguities be consistent with constitutional principles; the Pennsylvania Constitution, Article V, §9 provides for a right of appeal from an administrative agency to a court of record, and operating privileges are protectable property interests that may not be terminated without the procedural due process required by the fourteenth amendment. *Bell v. Burson*, 402 U.S. 535 (1971); *Commonwealth v. Abraham*, 7 Pa. Commonwealth Ct. 535, 300 A.2d 831 (1973). Even where the statutory scheme provides for a summary suspension, as here, if the licensee is guaranteed a prompt post-suspension hearing, the constitutional requirements are satisfied. *Mackey v. Montrym*, 99 S.Ct. 2612 (1979).

The *de novo* hearing before the lower court cures any procedural due process defect resulting from the lack of an administrative hearing. *Commonwealth v.*

*Grindlinger,* 7 Pa. Commonwealth Ct. 347, 351, 300 A.2d 95, 96 (1973).

To construe the ambiguous provision of Section 1550 within constitutional guidelines, we hold that the lower court is not limited to a determination of the identification of the licensee, but must hear evidence upon, and reach the merits of the suspension, in the light of the substantive standing of Section 1547.

Our interpretation is in conformity with the way recent decisions have construed the statute, although the specific question has not been raised until now. *Ford v. Commonwealth,* 45 Pa. Commonwealth Ct. 268, 406 A.2d 240 (1979); *Haklits v. Commonwealth,* 44 Pa. Commonwealth Ct. 198 (1979).

Thus, because the Commonwealth is required to prove what happened with respect to the driver's alleged refusal to take a breathalyzer test, the court below erred in excluding the introductory threshold testimony which we have described.

It is clear from the record that Commonwealth counsel was employing very general questions, perhaps in an effort to avoid leading his own witness. The driver's counsel argues that Commonwealth counsel should have tried rephrasing the questions, but the record is clear that the trial judge was at that point ruling that only the identity of the driver, not the events, could be considered, a position from which the judge apparently departed, after reflection, in writing the opinion.

We will remand this case for a hearing on the merits.

ORDER

AND Now, this 8th day of November, 1979, the order of the Court of Common Pleas of Montgomery County (Civil Action No. 78-7962), July 10, 1978, is reversed, and the case is remanded to the court for a hearing consistent with this opinion.