## Commonwealth v. Madonna

*Sandra L. Guydon,* for Commonwealth.
*John P. Gregg,* for petitioner.

NICHOLAS, *J.*, March 8, 1984—On December 7, 1983, the Commonwealth of Pennsylvania, Department of Transportation, notified Petitioner, Samuel Madonna, 3rd, that his operator's license was to be

suspended for a period of one year beginning January 11, 1984, for refusal to take a breathalyzer test in violation of Section 1547 of the Vehicle Code, 75 Pa.C.S.A. §1547(b). Madonna appealed the suspension to this court. A hearing de novo was held before the undersigned on February 13, 1984.

At the hearing, arresting Upper Dublin Police Officer John DeJenno testified that in the early morning hours of November 19, 1983, he arrived at the scene of an automobile accident involving Madonna. Officer DeJenno observed that Madonna had suffered a injury to his mouth, but after a brief examination of the wound, did not believe it to be serious as there was no extensive bleeding. An ambulance was summoned to the scene of the accident but Madonna refused treatment.

Madonna was then arrested and taken to the police station. Officer DeJenno stated that Madonna was requested to submit to a breathalyzer examination, and was warned that a refusal to submit to the exam would result in a suspension of his operator's license. Madonna agreed to take the test and was instructed to blow into the plastic tube that was inserted in his mouth.

Officer DeJenno testified that despite an apparent effort by Madonna to blow into the tube, no reading could be obtained on the machine. Madonna was instructed to continue. Officer DeJenno observed that despite Madonna's cheeks being "puffed out", his lips seemed to separate from the tube and air was escaping from the corners of his mouth. Officer DeJenno believed that Madonna's tongue was covering the tube opening. Still, no reading could be obtained. A third attempt was made, but Madonna eventually said "that's it, I quit." Officer DeJenno's testimony was corroborated by Sergeant James Miller who was present during part of the testing procedure.

Madonna testified that he experienced some bleeding and numbness in the area of his mouth, but that he did not consider the injury serious enough to go in the ambulance to the hospital. Madonna stated that he understood that a refusal to take the breathalyzer test would result in the suspension of his license, and that he intended to cooperate and take the test. Madonna said that he blew as hard as he could into the machine for a number of minutes but gave up, believing that there was something wrong with either the machine or its operation. Madonna was not aware at the time that his injury was interferring with his ability to blow at the time he took the test. The police did not attempt to have blood withdrawn for testing for its alcoholic content.

Madonna further testified that the next day, after feeling discomfort and examining the laceration with a mirror, he went to a hospital where he received fourteen stitches, three on the outside and eleven on the inside of his mouth. The injury left a scar on the corner of his mouth and on the inside of his mouth which was observed by the court.

Madonna's testimony as to the nature and extent of the wound was corroborated by his mother. Testimony was also received by Stanley J. Broskey, forensic scientist qualified as an expert in the use of the breathalyzer, who stated that a laceration to the corner of the mouth such as was sustained by Madonna would make it difficult for the lips to form and maintain the necessary seal around the tube in order to create sufficient pressure to perform the test.

After consideration of the evidence introduced at the hearing and the arguments and memoranda of counsel, the court makes the following

## FINDINGS OF FACT

1. On November 19, 1983, petitioner was involved in an automobile accident in which he sustained a laceration to the corner of his mouth which required a total of 14 stitches.

2. Petitioner was arrested and taken to the stationhouse where he consented to take a breathalyzer examination. Petitioner had been warned, and understood, that refusal to take the test would result in the suspension of his operator's license.

3. Despite good faith efforts by petitioner to take the test, air escaping out the sides of his mouth prevented him from blowing into the machine with enough pressure to enable the machine to give a reading because of the injury to his mouth.

4. Petitioner was justified in refusing to continue with the examination after three attempts, believing that something was wrong with either the machine or its operation, where his inability to perform the test was due to his mouth injury and not a deliberate refusal to perform the test.

5. No blood test, in lieu of the breath test, was performed, as it could have been pursuant to 42 Pa.C.S.A. § 1547 (g) where petitioner was physically unable to supply enough breath to complete the breath test.

Accordingly, the court makes the following

## CONCLUSIONS OF LAW

1. Upon appeal of an operator's license suspension, the duty of the Court of Common Pleas is to hear the matter de novo, make findings of fact, and exercise its discretion in determining whether the suspension was warranted. 75 P.S. § 1550; Commonwealth v. Quinlan, 47 Pa. Commw. 214, 408

A.2d 173 (1979); Commonwealth v. Emerick, 373 Pa. 388, 96 A.2d 370 (1953).

2. To sustain a license suspension under Section 1547 (b) of the Motor Vehicle Code, 75 P.S. § 1547 (b), the initial burden is on the Commonwealth to establish that the driver involved [1] was arrested for driving while under the influence of alcohol, [2] was asked to submit to a breathalyzer test [3] refused to do so, and [4] was specifically warned that a refusal would result in the revocation of his driver's license. Everhart v. Commonwealth, 54 Pa. Commw. 22, 420 A.2d 13 (1980); Waigand v. Commonwealth, 68 Pa. Commw. 541, 449 A.2d 862 (1982).

3. Questions of credibility and resolution of testimonial conflicts are for the court which hears the testimony. McMahon v. Commonwealth, 39 Pa. Commw. 260, 395 A.2d 318 (1978); Cappazoli Appeal, 63 Pa. Commw. 411, 437 A.2d 1340 (1981).

4. Whether a driver deliberately refused to take the breath test is a question of fact for the lower court. Herring v. Commonwealth, 50 Pa. Commw. 608, 413 A.2d 1171 (1980).

5. Where appellant suffered an injury to his mouth, consented to take the breathalyzer test but had difficulty supplying enough breath to allow the machine to give a reading due to the injury, and after three attempts declined to continue, appellant did not "refuse" to take the breath test within the meaning of 75 P.S. § 1547 (b) (1). See, Commonwealth v. Gallagher, 94 Montg. Co. L. R. 139 (C.P. 1971); Commonwealth v. Kelly, 18 Pa. Commw. 490, 335 A.2d 882 (1975); Commonwealth v. Tantlinger, Pa. Commw. 371 A.2d 1037 (1977).

6. The Commonwealth failed to meet its burden of proof as appellant did not "refuse" to take the breath test within the meaning of the statute, 75 P.S. § 1547 (b) (1).

7. In the alternative, the evidence convinces us by a preponderance of the evidence that defendant's "refusal" was justified by his physical incapacity, the injuries to his mouth.

Based on the aforementioned findings of fact and conclusions of law, we enter the following

## ORDER

And now, this March 8, 1984, the appeal of Samuel Madonna, 3rd., is sustained and Commonwealth's suspension of his operator's license is reversed.