## Commonwealth v. Martin

*Lawrence R. Wieder,* for the Commonwealth.
*John B. Mancke,* for defendant.

DOWLING, *J.,* September 7, 1984 — Clifford, cruising on his cycle at speeds in excess of 100 miles per hour and ignoring several red traffic signals while being pursued by the constabulary, was finally halted by Susquehanna Township patrolman David Bogdanovic, whereupon his jocund manner was explained by the strong aroma of alcohol emanating from his person. This blithe spirit was arrested for driving under the influence and transported to the police station where he became somewhat less than jolly, refusing to answer any questions or supply sufficient air for a breathalyzer test.

His operating privileges were thereafter suspended for a period of one year pursuant to Section 1547 of the Vehicle Code.* And from this action, he appeals to court alleging his suspension to be improp-

------

*75 Pa.C.S. §1547.

er because he was physically incapable of activating a breathalyzer device due to an impairment in his breathing capacity.

He presented in support several depositions including that of Dr. Charles E. Nicholas, Jr. and Professor Charles H. Roberts. The former testified that in 1980 defendant came to him with a history of having inhaled metallic dust, with complaints of chest pains, coughing and shortness of breath. X-rays revealed nothing of particular significance and the doctor continued to see Mr. Martin intermittently. In December of 1983, defendant's employer, Bethlehem Steel, had a lung capacity test performed which showed that Mr. Martin's forced expiratory volume of air was only 72 percent of normal. After the arrest (which occurred April 12, 1984), and on May 24, 1984, Dr. Nicholas performed another test which he said revealed that the 72 percent of normal capacity continued, and further, that in his opinion it showed that his lung capacity for a sustained breath was considerably diminished.

The good professor, now teaching at the Dickinson School of Law, said that in his opinion, and he was well qualified as an expert on breathalyzer tests, a person with Mr. Martin's diminished capacity would be unable to sustain a forced breath for the required seconds necessary to activate the unit.

The Commonwealth Court has frequently enunciated the rule that in order to sustain a suspension for refusal to submit to a chemical test of breath, it must be established that the driver was placed under arrest on a charge of driving while intoxicated and refused to submit to a breathalyzer test when requested to do so. See Department of Transportation v. Tantlinger, 29 Pa. Commw. 536, 371 A.2d

1037 (1977). Here it was agreed that the only issue was whether defendant had refused the test. The testimony of Officer Bogdanovic, which we accept as credible, was in its pertinent portion as follows:

"He leaned over, he took a half — when I say a half breath, he didn't take a real deep breath and he blew. He made like he was blowing, but there was no air leaving his mouth because I got down real close to him to make sure and then he pulled up and said he was having problems, so I said well, we have some more time here, if you don't blow into it, it is a refusal."

The second time he went down he was blowing out the side of his mouth and at this time there was no condensation on the tube that leads to the mouthpiece or the mouthpiece.

"Q. Did you examine the mouthpiece to see if it was obstructed in any way?

A. Yes, I did.

Q. And what did you observe?

A. It was not obstructed, it was a clear plastic mouthpiece.

Q. Did you examine the machine to see if it appeared to be working correctly?

A. The machine did go through the proper procedures at the proper sequence.

Q. Did the defendant appear to be out of breath at all?

A. No, he didn't.

Q. Did the defendant complain to you that he was having trouble breathing?

A. After we gave him the second opportunity at about a minute and a half at the machine, we turned it off. He then explained to me that he had trouble breathing and no other time did he make any attempts to tell me this. The only thing I can say, he appeared to be a healthy, young man and we

have a small flight of steps at our office, about seven or eight steps and he didn't appear to be winded at this point."

It is well established that if defendant refuses to take a breath test by failing to supply sufficient breath for the test to be conducted. Commonwealth v. Hanes, 49 Pa. Commw. 407, 411 A.2d 571 (1980). Furthermore, we note that the refusal to submit to a breathalyzer test is a factual, not a legal determination. Commonwealth v. Miles, 8 Pa. Commw. 544, 304 A.2d 704 (1973). It is the function of the lower court to decide on the credibility of the witnesses. Campbell v. Department of Transportation, 16 Pa. Commw. 9, 329 A.2d 867 (1974).

The simple declaration of inability to perform the test, absent supportive medical proof, will not justify a refusal. Bureau of Traffic Safety v. Kelly, 18 Pa. Commw. 490, 335 A.2d 882 (1975). This does not mean, however, that simply because there is medical evidence as well as other expert testimony, that we must afford it controlling credibility. The lung capacity test conducted prior to the incident showed that defendant had a capacity of 2800 milliliters. Defendant's own expert testified that the breathalyzer model used required a total of approximately 450 milliliters of air to operate. As to the length of time over which defendant could exhale, which was principally the basis for Professor Robert's conclusion, this was based on an estimate after the arrest without the presence of any Commonwealth or disinterested witnesses and containing inherently a high degree of subjectivity. We thus place little credibility in this evidence.

We concluded, therefore, that defendant by failing to supply sufficient breath, did in fact refuse the test, and accordingly we enter the following

## ORDER

And now, this September 7, 1984, defendant's petition for appeal of license suspension is dismissed.