## PennDOT v. Frey

*Lawrence Wieder,* for PennDOT.
*James K. Jones,* for petitioner.

BAYLEY, *J.,* April 11, 1989 — Following a stop at 12:20 a.m. on October 27, 1988, Officer Jeffrey Franks of the Borough of Wormleysburg arrested petitioner, Richard Howard Frey, for driving under the influence. He transported petitioner to a booking center and advised him of his rights under the Implied Consent Law. Mr. Frey agreed to take an intoxilyzer test and gave two adequate breath samples for that purpose. However, the Intoxilyzer 5000 malfunctioned before a valid test result was obtained and it could not be recalibrated at that time. The officer then asked petitioner if he would consent to the taking of blood for an alcohol test at the Harrisburg Hospital. Petitioner agreed and the officer took him to the Harrisburg Hospital where they arrived at 1:55 a.m.

Officer Franks testified that the rules of the hospital required petitioner to sign two forms before they drew blood. One form was titled: "Consent for Testing To Determine Presence Of Alcohol And/Or Controlled Substances Under Pennsylvania Motor Vehicle Code." The other form set forth:

"Authorization to Treat — Statements on this form are true to the best of my knowledge and I hereby authorize the physician or physicians in charge of the care of this patient to administer any treatment or to administer such anesthetics and perform such operations as may be deemed necessary or advisable in the diagnosis and treatment of this patient."

Officer Franks testified that he and the chief of the hospital security force read both forms to peti-

tioner several times. He further advised petitioner that his operator's license would be suspended for one year if he did not submit to a blood test. Petitioner responded that he did not understand what some of the words on the form were and that he only went to the eleventh grade and did poorly in English. The officer testified that petitioner would not sign the "authorization to treat" form, although he may have signed the "consent for testing" form (the officer did not think he had). In any event, it is clear that petitioner never signed the "authorization to treat" form and he was told that he had to sign both forms before the hospital would conduct a blood test. Officer Franks finally left the hospital with petitioner at 2:45 a.m. The commonwealth's suspension of petitioner's operating privileges followed notification of a refusal of a blood test.

Petitioner testified that he gave the breath samples to Officer Fry at the booking center but that the intoxilyzer would not work. He then gave his consent to the taking of blood and was taken to the Harrisburg Hospital. It was his recollection that the "consent for testing" block for his signature, and the "authorization to treat" block for his signature, were on one form. He stated that he signed the "consent for testing" block although he crossed out the words for controlled substance since he considered that he was being tested only for the amount of alcohol in his blood. He acknowledged that he told the officers that he did not understand the request for him to sign an authorization for treatment and that he did not sign that block whether there was one form or two forms.

## DISCUSSION

In light of petitioner's willingness to take both an intoxilyzer test and a blood test, his statement that

he signed the "consent for testing" form but not the "authorization to treat" form, and the officer's statement that he was not absolutely certain that petitioner did not sign the "consent for testing" form, we find as a fact that petitioner did sign a "consent for testing" form but did not sign the "authorization for treatment" form.[1] Petitioner maintains that his liicense cannot be suspended because he is being penalized for not signing the hospital's "authorization for treatment" form, not for refusing to take a test to measure the alcohol content of his blood.

The circumstances of a refusal to take a test which triggers the right of the commonwealth to suspend operating privileges "depends on whether the refusal was a conscious and knowing act." *Commonwealth, Bureau of Traffic Safety v. Tantlinger,* 29 Pa. Commw. 536, 371 A.2d 1037 (1977). Case law reveals that a refusal to sign a waiver of hospital liability is not a conscious and knowing act. *Maffei v. Commonwealth, Department of Transportation,* 53 Pa. Commw. 182, 416 A.2d 1167 (1980). However, refusal to sign a hospital consent form is a conscious and knowing refusal to take a blood test. *Selan v. Commonwealth, Department of Transportation,* 108 Pa. Commw. 36, 529 A.2d 65 (1987). The issue, having found petitioner signed the consent form, is whether his not signing the "authorization to treat" form constitutes a conscious and knowing refusal to take a blood test.

Section 1547 of the Vehicle Code[2] *only* requires a

---

1. The two exhibits admitted into evidence in this proceeding were identified by the officer as forms similar to those that were utilized at the hospital on the evening of October 27, 1988. Petitioner did not produce any other documentary evidence.

2. Implied Consent Act of June 17, 1976, as amended, 75 Pa.C.S. §1547.

driver submit to a breath, blood or urine test. Other conditions added to these tests, such as performance tests, questionannaires, and waivers of liability are not part of the section. Refusal to submit to these conditions does not constitute a conscious and knowing refusal in violation of section 1547. See *Maffei, supra; Sickman v. Commonwealth*, 79 Pa. Commw. 173, 468 A.2d 909 (1983). The "authorization to treat" form is an additional condition and refusal to sign it does not constitute a refusal of Implied Consent Law.

Accordingly, petitioner's suspension of his operating privileges is reversed.

## ORDER OF COURT

And now, April 11, 1989, petitioner's suspension of his operating privileges is reversed.