838 A.2d 700

C. Larry McKINLEY, Appellant

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee.

Supreme Court of Pennsylvania.

Argued May 13, 2003.

Decided Dec. 18, 2003.

John B. Mancke, Harrisburg, for C. Larry McKinley, Appellant.

Timothy P. Wile, Harrisburg, Terrance M. Edwards, for Dept. of Transp., Bureau of Driver Licensing, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Justice SAYLOR.

This appeal follows our remand to the Commonwealth Court for additional review of the validity of an administrative driver's license suspension under the Implied Consent Law, which was predicated on an extraterritorial encounter between Appellant and a Harrisburg International Airport Police corporal.

The relevant procedural history and background are described in our prior opinion. *See McKinley v. PennDOT*, 564 Pa. 565, 769 A.2d 1153 (2001) ("McKinley II"). Briefly, Appellant, C. Larry McKinley ("McKinley"), was stopped in his vehicle by a corporal of the Harrisburg International Airport ("HIA") Police at a location outside the airport officer's jurisdiction. When asked to submit to chemical alcohol testing, McKinley refused, resulting in an automatic, administrative suspension by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (the "Department" or "PennDOT"), of his driver's license pursuant to the Implied Consent Law, 75 Pa.C.S. § 1547(a), (b) ("If any person placed under arrest for [driving under the influence ("DUI")] is requested to submit to chemical testing and refuses to do so, . . . the department shall suspend the operating privilege of the person for a period of 12 months."). In McKinley's statutory appeal, the common pleas court overturned the suspension on the ground that the HIA police corporal lacked extraterritorial arrest powers, but the *en banc* Commonwealth Court reversed, holding that HIA police officers possessed extra-jurisdictional powers of municipal police. *See McKinley v. PennDOT*, 739 A.2d 1134 (Pa.Cmwlth.1999) ("*McKinley I*"). On allowance of appeal by this Court, however, we determined that the lawful exercise of police powers by HIA officers was, by legislative design, confined to airport premises; thus, we remanded for consideration of other issues relevant to the appeal. *See McKinley II*, 564 Pa. at 579–85, 769 A.2d at 1161–64. In particular, we asked the Commonwealth Court to determine the proper application of specified terms of the Implied Consent Law in light of the extraterrito-

rial aspect of the encounter, and, in the course of this evaluation, to resolve a conflict in its decisional law exemplified by the divergent rationales and holdings of *Kuzneski v. Commonwealth,* 98 Pa.Cmwlth. 595, 511 A.2d 951 (1986), and *Horton v. PennDOT,* 694 A.2d 1 (Pa.Cmwlth.1997).

Following remand, a divided Commonwealth Court panel determined that the situs of the encounter between the HIA corporal and McKinley, although beyond the corporal's territorial jurisdiction, did not impact on the legal effect of McKinley's refusal under the Implied Consent Law. *See McKinley v. PennDOT,* 793 A.2d 996, 1002 (Pa.Cmwlth.2002) ("McKinley III"). Accordingly, the court reaffirmed its prior disposition overturning the grant of McKinley's statutory appeal.

In so holding, the Commonwealth Court majority endorsed the *Kuzneski* line of reasoning to the effect that to be a "police officer" under the Vehicle Code's definition, *see* 75 Pa.C.S. § 102 (defining "police officer" as "[a] natural person authorized by law to make arrests for violations of law"), an individual need only be an "officer in fact," or an official with the power to arrest somewhere, to trigger a sustainable, refusal-based suspension. *See McKinley III,* 793 A.2d at 1001; *accord Kuzneski,* 98 Pa.Cmwlth. at 596–97, 511 A.2d at 952–53; *Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. Evans,* 20 Pa.Cmwlth. 403, 405–06, 342 A.2d 443, 445 (1975). In this regard, the majority distinguished cases in which the official initiating the request for consent lacked a power of arrest in the first instance. *See McKinley III,* 793 A.2d at 1001 (distinguishing *Commonwealth v. Roose,* 551 Pa. 410, 710 A.2d 1129 (1998), and *Snyder v. Commonwealth,* 163 Pa. Cmwlth. 178, 640 A.2d 490 (1994)). The majority also invoked a line of decisions by this Court that have held that the term "arrest" in the Implied Consent Law connotes an "arrest in fact" rather than a legal arrest. *See id.* (citing *Commonwealth, Dep't of Transp. v. Wysocki,* 517 Pa. 175, 535 A.2d 77 (1987); *Glass v. Commonwealth, Dep't of Transp., Bureau of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975)). According to the panel majority, the assessment that a police officer retains power to implement the Implied Consent Law outside his

territorial jurisdiction should be viewed as a corollary to this principle that an arrest need not be lawful in order to support a request for chemical testing. *See id.* at 1001. Further, the majority distinguished a line of decisions cited by McKinley as involving the effect of an extra-jurisdictional arrest in a criminal, as opposed to administrative license suspension, proceeding. *See id.* at 1002 (distinguishing *Commonwealth v. Sadvari,* 561 Pa. 588, 752 A.2d 393 (2000), *Commonwealth v. McCandless,* 538 Pa. 286, 648 A.2d 309 (1994), and *Commonwealth v. Johnson,* 743 A.2d 974 (Pa.Super.1999)). The majority also applied similar logic to conclude that an extraterritorial arrest, or the development of reasonable grounds to believe that a licensee is driving under the influence outside an officer's jurisdiction, is not an impediment to satisfaction of the Implied Consent Law's separate "reasonable grounds" requirement, *see* 75 Pa.C.S. § 1547(a) ("Any person who drives ... a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests ... if a police officer has reasonable grounds to believe the person to have been driving ... while under the influence[.]"). *See id.* at 1002. Finally, it cited this Court's holding that the remedy of suppression is unavailable in the administrative, license suspension context. *See id.* at 1002–03 (citing *Wysocki,* 517 Pa. at 180, 535 A.2d at 79; *Glass,* 460 Pa. at 368–369, 333 A.2d at 770–771).

Judge Pellegrini authored the dissent, opining that, as between *Horton* and *Kuzneski*; *Horton* represented the better view, namely, that refusal to submit to chemical testing at the behest of an official outside the boundaries within which he is authorized to exercise police authority should be deemed to have no legal effect under the Implied Consent Law. *See McKinley III,* 793 A.2d at 1003–04 (Pellegrini, J., dissenting) (citing *Horton,* 694 A.2d at 3). Judge Pellegrini reasoned as follows:

> Because a limited jurisdiction police officer does not have the authority to arrest an individual off-premises and is not covered by "fresh pursuit," he is also without jurisdiction to request an individual to submit to chemical testing.

Moreover, as we held in *Horton,* where an officer is not authorized to arrest an individual for driving under the influence, any refusal to submit to chemical testing was inconsequential. Therefore, because [the HIA corporal] was not authorized to arrest McKinley or to request he submit to chemical testing, his refusal cannot support a license suspension.

*Id.* at 1004 (footnote omitted); *accord Kline v. PennDOT,* 706 A.2d 909, 910 (Pa.Cmwlth.1998) (explaining, in the context of a refusal-based license suspension case, that "[w]here a licensee challenges the legal authority of the arresting officer, the Department bears the burden of proving that the officer has legal authority to make the arrest"), *rev'd on other grounds,* 559 Pa. 646, 741 A.2d 1281 (1999).

Presently, McKinley's primary argument—namely, that, by virtue of the statutory definition of police officer and the reasonable grounds requirement, the General Assembly has clearly indicated an intent to trigger the refusal-based suspension provision of the Implied Consent Law only when an official with then-present, legal authority to make an arrest is involved in an encounter—tracks the position of the *McKinley III* dissent. The Department's principal arguments align with the position of the panel majority. Additionally, PennDOT contends that Section 3731(c) of the Vehicle Code, 75 Pa.C.S. § 3731(c), which confers certain extra-jurisdictional arrest powers on police in relation to DUI arrestees, manifests the Legislature's intention to substantially broaden law enforcement jurisdictional limitations to combat the pernicious offense of driving under the influence. The Department also maintains that, to the extent there is tension between *Kuzneski* and *Horton, Horton* should be distinguished on the ground that, in the circumstances of that case (as opposed to its view of the present one), reasonable grounds to believe that the licensee was driving under the influence did not develop within the arresting officer's authorized territory.

As a threshold matter, we disagree with various of the contentions that the Department offers to supplement the Commonwealth Court majority's rationale. First, Section

3731(c) of the Vehicle Code, which extends police arrest powers to hospitals or medical facilities in certain circumstances,[1] does not support a generalized notion that jurisdictional boundaries are to be broadly expanded, and statutory limitations on extraterritorial arrest powers ignored, in the DUI arena. In fact, the narrow crafting of the statute in measured response to a particular, recurring situation involving the removal of a driver from the scene of an accident for medical treatment (which may involve traversing jurisdictional lines), *cf. Commonwealth v. Stair*, 548 Pa. 596, 699 A.2d 1250 (1997) (equally divided Court) (involving treatment of a Pennsylvania licensee in Maryland following an accident in Pennsylvania), suggests just the opposite. Specifically, the Legislature has retained the framework of particularly defined limits in this conferral of extraterritorial jurisdiction, *see generally McKinley II*, 564 Pa. at 577, 769 A.2d at 1160, even in the DUI arena, in apparent furtherance of various policy considerations, inherently involved in the designation of jurisdictional limitations, that compete with the aim of certainty in the apprehension and punishment of wrongdoers. *See, e.g., id.* at 579 n. 12, 769 A.2d at 1161 n. 12.

Additionally, the Department's treatment of *Horton* is problematic. Even if the decision were reconcilable with *Kuzneski* based on the geographic location of the development of reasonable grounds (and not the impact of the extraterritorial aspect of the arrest), *Horton* would remain in patent conflict

---

1. Section 3731(c) provides:

   **§ 3731. Driving under influence of alcohol or controlled substance**
   * * *

   **(c) Certain arrests authorized.**—In addition to any other powers of arrest, a police officer is hereby authorized to arrest without a warrant any person who the officer has probable cause to believe has violated the provisions of this section, regardless of whether the alleged violation was committed in the presence of such officer. This authority to arrest extends to any hospital or other medical treatment facility located beyond the territorial limits of the police officer's political subdivision at which the person to be arrested is found or was taken or removed to for purposes of emergency treatment examination or evaluation provided there is probable cause to believe that the violation of this section occurred within the police officer's political subdivision.

   75 Pa.C.S. § 3731(c).

with *McKinley III's* holding that "[f]or purposes of enforcement of the Implied Consent Law, the fact that a police officer may develop reasonable grounds to believe that a driver is operating under the influence outside his or her territorial jurisdiction is not fatal." *McKinley III*, 793 A.2d at 1002; *see also Evans*, 20 Pa.Cmwlth. at 405–06, 342 A.2d at 445 (sustaining a refusal-based license suspension based on an extraterritorial observation and arrest). The Department neither disavows such holding nor casts its position in this respect as an alternative one. This line of argumentation, therefore, contributes little more than confusion to the issues presently before us.

Moving to consideration of the reasoning advanced by the majority and dissenting positions from the Commonwealth Court, we find Judge Pellegrini's view to be the better one. Significantly, the line of authority advocating the "police officer in fact" interpretation, exemplified by the *McKinley III*; *Kuzneski*, and *Evans* decisions, can be traced to *Miles v. Commonwealth, Dep't of Transp., Bureau of Traffic Safety*, 8 Pa.Cmwlth. 544, 304 A.2d 704 (1973). There, in reaching the conclusion that an arrest need only be an "arrest in fact" to serve as the predicate for a refusal-based suspension under the Implied Consent Law, the court emphasized that the Legislature had neither defined the term "arrest" nor required its lawfulness, as for example, it had in other legislation. *See id.* at 550, 304 A.2d at 708. The court conceded, however, that, had the General Assembly so required, its holding would have been different. *See id.* On the other hand, the General Assembly has both specifically defined the term "police officer" for purposes of the Vehicle Code and incorporated a conception of lawfulness into such definition, since, as noted, it has prescribed that a police officer under the Vehicle Code must be "authorized by law to make arrests for violations of law." 75 Pa.C.S. § 102. It therefore does not necessarily follow, as the *McKinley III* majority asserts, as a corollary of the "arrest in fact" doctrine, that the General Assembly contemplated application of a "police officer in fact" doctrine in the Implied Consent Law.

Indeed, the ascription of such a broad definition to the Vehicle Code's definition of the term "police officer" as used in Section 6308(b), which contains provisions analogous to those used in the Implied Consent Law, *compare* 75 Pa.C.S. § 6308(b) ("Whenever a police officer ... has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle ...."), *with* 75 Pa.C.S. § 1547(a) (providing that a person operating a motor vehicle is deemed to have given consent to chemical testing "if a police officer has reasonable grounds to believe the person to have been driving" under the influence), would not comport with our decisional law. As Section 6308(b) permits a "police officer" to stop a vehicle where he has articulable and reasonable grounds to suspect a Vehicle Code violation, *see* 75 Pa.C.S. § 6308(b), equating the term "police officer" with an official who has a power of arrest only within restricted boundaries, but not necessarily at the location of any particular police-citizen encounter, would confer on limited jurisdiction officers statewide authority to stop automobiles and detain drivers for Vehicle Code violations. This, of course, would be contrary to this Court's interpretation of legislative intent as reflected in our precedent. *See, e.g., Commonwealth v. Firman*, 571 Pa. 610, 616–17, 813 A.2d 643, 647 (2002) (discussing the limited jurisdiction of officers of the Port Authority Police Department of Allegheny County in relation to Vehicle Code violations); *McKinley II*, 564 Pa. at 580, 769 A.2d at 1162.[2]

---

**2.** We recognize that the term "reasonable grounds" has been construed differently as between Sections 6308(b) and 1547. *Compare Commonwealth v. Whitmyer*, 542 Pa. 545, 551, 668 A.2d 1113, 1116 (1995) (equating Section 6308(b)'s reasonable grounds requirement with probable cause), *with Banner v. PennDOT*, 558 Pa. 439, 446, 737 A.2d 1203, 1207 (1999) (distinguishing Section 1547's reasonable grounds requirement from probable cause). We note, however, that the decision in *Whitmyer* to retain an elevated standard to support automobile stops for Vehicle Code violations derived from interpretation of an undefined term and reconciliation of the statute with prior rulings of the Court that the probable cause standard for these kinds of stops was constitutionally and/or judicially mandated, *see Whitmyer*, 542 Pa. at 548–51, 668 A.2d at 1115–16 (citing *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975), and *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973)), and not from the plain meaning of a statutorily defined term.

Additionally, although the *McKinley III* majority was correct to observe that the prevailing holding of the Court is that the remedy of suppression does not apply in the administrative, license suspension context,[3] the Court has also emphasized that compliance with the statutory requirements of the Implied Consent Law is to be treated as a distinct issue from more abstract arrest legality issues. *See Banner*, 558 Pa. at 446, 737 A.2d at 1207. Where, as here, the General Assembly has specified that officials may act as police officers only "at [specified] buildings or installations," 71 P.S. § 1791.1 (incorporated by reference into 74 Pa.C.S. § 5903, the HIA officers' enabling statute, via 74 Pa.C.S. § 5903(a)(10)); *see also McKinley II*, 564 Pa. at 578, 769 A.2d at 1160, we will not infer that it intended for such officials to be treated as police officers elsewhere. *Cf. Commonwealth v. Savage*, 403 Pa.Super. 446, 454–55, 589 A.2d 696, 700 (1991) ("An opposite result in the present case would, in effect, grant a license to campus police officers to patrol the surrounding municipalities without invitation and in usurpation of the powers of municipal police. This we will not and cannot do, as such ruling would be in clear violation of [the campus officers' enabling statute].").[4]

Limited jurisdiction police personnel are not entirely without recourse outside of their territorial boundaries. Nothing in our decisions prevents them from summoning the appropriate law enforcement officials, and exercising any lawful means

3. These holdings were based on Fourth Amendment analysis. This Court has not considered the propriety of suppression in the Implied Consent Law setting in the context of a challenge involving the assertion of the enhanced privacy protections under Article I, Section 8 of the Pennsylvania Constitution. *See generally Commonwealth v. Edmunds*, 526 Pa. 374, 402, 586 A.2d 887, 901 (1991).

4. A number of jurisdictions that have ruled to the contrary rely on the rationale that police officers outside their jurisdiction retain authority to conduct a citizen's arrest. *See, e.g., State v. Stevens*, 224 Conn. 730, 620 A.2d 789, 795 (1993); *State v. Griffiths*, 113 Idaho 364, 744 P.2d 92, 97 (1987). Under prevailing decisions of this Court, however, in Pennsylvania, police have no such authority. *See McKinley II*, 564 Pa. at 583–84 n. 18, 769 A.2d at 1164 n. 18 (citing *Commonwealth v. Price*, 543 Pa. 403, 411–12, 672 A.2d 280, 284 (1996)). Notably, as well, these cases frequently arise in the medical treatment paradigm, *see, e.g., Stevens*, 620 A.2d at 791, which the Pennsylvania General Assembly has specifically sought to address, *see* 75 Pa.C.S. § 3731(c).

to assist in the identification of law violators. Nevertheless, as the Legislature has circumscribed their police authority, we hold that they lack the ability to act as police officers in implementation of the Implied Consent Law outside territorial boundaries, in the absence of an express, legislative grant of extraterritorial authority.

The Commonwealth Court's order is reversed, and the common pleas court's order invalidating the license suspension under review is reinstated.

Justice EAKIN files a concurring opinion.

Justice NEWMAN files a dissenting opinion in which Justice CASTILLE joins.

Justice EAKIN concurring.

I concur with the majority to the extent it holds HIA officers outside their jurisdiction are not "police officers in fact" for purposes of the Implied Consent Law. However, I believe an HIA officer who forms probable cause to stop a vehicle on airport premises, but who is unable to make a stop until the vehicle is outside airport property, is still a police officer for purposes of Implied Consent Law because he is in fresh pursuit. The question of whether he is a "police officer in fact" does not arise in this context.

The statute conferring power on HIA officers states, in pertinent part, "each [officer] shall have and exercise full power to make arrests without warrant for all violations of law which they may witness upon any part of the premises." 71 P.S. § 1791.1. In construing this statute, this Court held in *McKinley II*,[1] an HIA officer has the authority to enforce the Vehicle Code within his jurisdiction. *McKinley v. PennDOT*, 564 Pa. 565, 769 A.2d 1153, 1158 (2001). Although the General Assembly did not explicitly grant extra-territorial arrest powers to HIA officers, neither did they limit such officer's power to pursue a suspect off airport property. Indeed, the statute

---

1. I did not participate in *McKinley II*.

says that once the offense is witnessed, the officer has "full power" to arrest without a warrant.

In *McKinley II*, this Court held the stop effectuated by the HIA corporal was illegal because the General Assembly has not explicitly granted HIA officers extra-territorial powers. Under the rules of statutory interpretation, the HIA officer enabling statute is to be given a liberal interpretation in order to effect its object and promote justice. *See* 1 Pa.C.S. § 1928. The object of having police officers with limited jurisdiction, such as the HIA police, is to have qualified persons on the premises in case a crime occurs. In order to promote justice, such officers may from time to time have to leave the premises to effectuate a traffic or other type of investigatory stop. This is not to say these officers may patrol areas outside their jurisdiction. On the contrary, such officers should be entitled to perform their law enforcement duties outside their jurisdiction only when they are in fresh pursuit. Thus, a fair reading of the statute leads to the conclusion that when an officer witnesses a violation of law within his jurisdiction, he is allowed to pursue the suspect until he is in a position to apprehend.

Otherwise, if an HIA officer attempts to effectuate a traffic stop, there is nothing to keep a suspect from fleeing airport property, leaving the officer standing at the border like the posse in a bad western movie, watching powerlessly at the suspect riding slowly away. The majority suggests the officer may summon the "appropriate law enforcement officials" in order to effectuate an arrest, but this is not always practical. It also ignores the urgency involved in dangerous situations, such as a person driving under the influence.

I agree with the majority to the extent that an HIA officer without probable cause to believe a violation has occurred on airport property is not a "police officer in fact" for Implied Consent Law purposes if he conducts an extra-jurisdictional traffic stop. However, if probable cause does exist, I believe the doctrine of fresh pursuit allows the stop and that which follows.

Justice NEWMAN dissenting.

For the second time in the course of this protracted litigation, I dissent. The Commonwealth Court has now adjudicated this matter twice, and I fully concur in its determination.

This case concerns the authority of an airport police officer who arrests an intoxicated driver one-half mile off airport property, when the officer saw the driver violate traffic laws on airport property, the violator fled, and did not stop until one-half mile outside of the airport. The finding of the majority, that once the violator crosses a "magic" line at the airport boundary, the officer must allow him to escape, strains credulity.

On January 4, 1997, Laurence A. Miller (Corporal Miller), a duly commissioned Harrisburg International Airport (HIA) police officer, in uniform, and in a marked patrol car, was on duty at the airport when he saw the car of C. Larry McKinley (Appellant) parked on airport property on a ramp connecting the main airport drive to a public highway. He observed the car cross the highway and strike a concrete curb on the opposite side. Concerned about Appellant's erratic driving behavior, Corporal Miller began to follow the vehicle, staying on airport property. The car then accelerated and crossed the road's centerline. Not yet in a position to initiate a traffic stop because of the distance between the two cars, Corporal Miller observed Appellant's car cross the centerline two more times. Corporal Miller then activated his emergency lights, and Appellant's car continued, before stopping one-half mile from the airport.

When Corporal Miller approached Appellant, he detected a strong odor of alcohol, administered field sobriety tests, which Appellant failed, and arrested him for driving under the influence. Corporal Miller explained the Implied Consent Law [1] to Appellant, and Appellant refused to submit to chemical testing, thereby triggering an automatic, administrative license suspension for a one-year period by the Department of

1. Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547(a).

Transportation, Bureau of Driver Licensing (PennDOT), pursuant to 75 Pa.C.S. § 1547(a), (b).

The trial court overturned the suspension, finding that no specific vehicle violation occurred on the airport premises, and that Corporal Miller lacked extraterritorial arrest powers. However, the *en banc* Commonwealth Court reversed at *McKinley v. PennDOT*, 739 A.2d 1134 (Pa.Cmwlth.1999), noting in particular that the trial court erred as a matter of law in finding that Appellant had not committed violations of law on airport property.[2] The court also described the extensive authority of HIA police, determining that "officers such as Corporal Miller at the [HIA] at the time of the arrest in question are to be regarded as having the full powers of traditional police in the municipality in which the Commonwealth facility is located." *Id.* at 1138.

On allowance of appeal to this Court, the majority determined that Corporal Miller was a police officer for purposes of enforcing the Implied Consent Law, but that he lacked authority to effectuate the extraterritorial arrest of Appellant. *McKinley v. PennDOT*, 564 Pa. 565, 769 A.2d 1153 (2001). I dissented on the issue of territorial limitation, seeing no legislative purpose that would justify such a nonsensical restriction on an officer who has commenced pursuit at the airport, only to be told that once the violator is one-half mile away, he must abandon his duty. The majority remanded to the Commonwealth Court primarily for it to consider the extraterritorial issue and to resolve the conflict between *Horton v. PennDOT*, 694 A.2d 1 (Pa.Cmwlth.1997),[3] and *Kuzneski v. Commonwealth*, 98 Pa.Cmwlth. 595, 511 A.2d 951 (1986).[4]

**2.** Appellant violated 75 Pa.C.S. § 3714 relating to careless driving, and 75 Pa.C.S. § 3301 relating to driving on the right side of the roadway.

**3.** In *Horton*, the court determined that a campus police officer was not authorized to arrest a licensee for driving under the influence outside of his territorial jurisdiction and that the refusal to submit to chemical testing was inconsequential.

**4.** In *Kuzneski*, the court refuted a driver's contention that a police officer who made a request for chemical testing was not a "police officer" under the Vehicle Code because he was outside of his territorial jurisdiction.

Following remand, the Commonwealth Court reaffirmed its prior disposition, holding that the extraterritorial stop did not undermine Corporal Miller's status as a police officer with respect to the Implied Consent Law, that it made no difference that the officer did not fully develop "reasonable grounds" for the arrest until after the traffic stop, and that suppression of evidence has no place in civil and administrative licensing proceedings. *McKinley v. PennDOT*, 793 A.2d 996 (Pa.Cmwlth.2002). The court relied on its decision in *Dept. of Transp., Bureau of Traffic Safety v. Evans*, 20 Pa.Cmwlth. 403, 342 A.2d 443 (1975), where an officer made an arrest outside of his jurisdiction that resulted in license suspension. "What is important is that factually [defendant] was admittedly placed under arrest, that he was charged with operating a motor vehicle while under the influence of intoxicating liquor, that he was requested to take the breathalyzer test and that he refused." *Id.* at 445.

The majority now reverses the Commonwealth Court, postulating that with respect to HIA police, "the Legislature has circumscribed their police authority," and leaps to an astounding conclusion that "we will not infer that [the General Assembly] intended for such officials to be treated as police officers elsewhere." The majority bases its restrictive view on the statutory grant of authority of airport police to make arrests for violations that they see on Commonwealth property. 71 P.S. § 1791.1.[5] However, in doing this, the majority ignores the fact that Corporal Miller *did* see Appellant's violations on Commonwealth premises and did begin his pursuit of Appellant there. Instead of looking at what transpired, the majority dissects the incident into two pieces and determines that they are separate and, in effect, unrelated, leaving Corporal Miller with no authority to complete the entire job with which he was charged. Unfortunately, this perspective obfuscates the reality that Corporal Miller was pursuing Appellant be-

5. This section provides that once an individual is approved by the Governor to serve as a police officer at a Commonwealth building, the officer "shall have and exercise full power to make arrests without warrant for all violations of law which they may witness upon any part of the premises...."

cause of traffic violations that he committed on airport property. Pursuant to 42 Pa.C.S.A. § 8953(a),

> Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases: (2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

The majority fears that affirming the Commonwealth Court "would confer on limited jurisdiction officers statewide authority to stop automobiles and detain drivers for Vehicle Code violations." Given the facts before this Court, this is an exaggerated concern. The view that I express in favoring sustaining an extraterritorial arrest calls for no such result and is limited by the following facts: (1) the airport police officer must be on duty at the airport; (2) he must witness the violation committed on airport premises; (3) he must begin pursuit while inside the boundary of airport property; and (4) the arrest off the property must be contemporaneous with the prior steps.

The result of the majority's Opinion, I fear, will be to tie the hands of these police officers in performing their critical jobs. Clearly, the General Assembly did not intend this absurd result in the Implied Consent Law or in the description of the wide range of powers assigned to HIA officers. In this day of heightened security concerns, particularly with respect to air travel, we can ill-afford to set this precedent, which tells an airport police officer that he must withdraw from pursuing a wrongdoer who is clever enough, or just happens to exit the airport premises while being pursued by the police.

Justice CASTILLE joins this dissenting opinion.