**Robert F. TAYLOR**

v.

**COMMONWEALTH OF PENNSYLVANIA, Department of Transportation, Bureau of Driver Licensing, Appellant.**

**Robert F. Taylor, Appellant**

v.

**Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2008.
Decided March 20, 2008.
Publication Ordered May 15, 2008.

---

Charles T. DeTulleo, West Chester, for appellant.

Terrance M. Edwards, Asst. Counsel, Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY SENIOR Judge McCLOSKEY.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Delaware County (trial court), granting Robert F. Taylor's (Licensee's) appeal from a one-year suspension of his operating privileges. Licensee has filed a cross-appeal. We quash Licensee's cross-appeal and affirm the order of the trial court.

DOT notified Licensee that his operating privileges were being suspended pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), based on his refusal to submit to chemical testing in connection with his arrest for a violation of 75 Pa.C.S. § 3802 (driving under the influence of alcohol (DUI)). Licensee appealed this determination to the trial court. The trial court held a *de novo* hearing as to the suspension.

At the hearing before the trial court, Officer Ray Blohm, an officer with the Upper Darby Township Police Department testified on behalf of DOT. He stated that on November 19, 2005, at approximately 2:50 a.m., he was participating in a DUI checkpoint in Upper Darby Township. He stopped Licensee's vehicle as it was going through the checkpoint and then initiated a discussion with Licensee. Officer Blohm noted that there was a strong odor of alcohol emanating from Licensee. He also noted that Licensee's speech was slurred and that Licensee had red, glassy, bloodshot eyes.

Officer Blohm instructed Licensee to park his vehicle in the lot of an automotive business and to speak to one of the officers in the lot. He testified that he did not place Licensee under arrest at that time. Officer Blohm stated that he did not have any further contact with Licensee that morning.

Officer Michael Markunas testified next on behalf of DOT. Officer Markunas stated that he was a patrolman with the Nether Providence Township Police Department. He stated that he had been asked by Officer Richard Fuller of the Brookhaven Borough Police Department to work at the DUI checkpoint. He testified that Upper Darby Township had not had a DUI checkpoint in "some time." (R.R. at 48a). He stated that Officer Fuller was active in running checkpoints and that he had worked at a number of checkpoints with Officer Fuller.

Officer Markunas stated that Licensee pulled into the parking lot. At that time, Officer Blohm informed him that Licensee had an "odor of alcohol." (R.R. at 50a). When Licensee exited the vehicle, Officer Markunas noted that Licensee had glassy, bloodshot eyes and slurred speech and appeared intoxicated.

Officer Markunas stated that he conducted a breath test on Licensee, using a portable breath test unit. The test revealed an alcohol content of .15%. Officer Markunas then asked Licensee to perform the "walk and turn" test. (R.R. at 53a). Licensee failed this test by failing to walk "heel to toe," as instructed. (R.R. at 53a).

As Licensee failed both tests, Officer Markunas placed him under arrest and advised him of the obligation to submit to chemical testing. Licensee was then turned over to another officer and was transported to the Upper Darby Township Police Department.

Officer Richard Calcagni testified next on behalf of DOT. Officer Calcagni testified that he was a patrolman for the Upper Darby Township Police Department and was the Intoximeter operator on the morning of Licensee's arrest. Officer Calcagni stated that he was certified to operate the Intoximeter, but did not have documentation of his certification to provide to the trial court.

Officer Calcagni stated that Licensee was seated at the Intoximeter and read the implied consent warnings. Licensee then signed a form that he had been advised of his rights and agreed to submit to a breath test.

Officer Calcagni stated that he calibrated the Intoximeter and instructed Licensee on its use.[1] Licensee was informed that he had to provide two breath samples in order to be properly tested. Licensee then provided the first breath sample. This sample was correctly given and indicated a blood alcohol content of .116%. Licensee's second sample was deemed insufficient by the machine. Licensee was given an opportunity to provide a third sample. This sample was also deemed insufficient by the machine.

Officer Calcagni provided the printout from the Intoximeter. The printout showed that Licensee provided one valid sample. The printout also showed that the test was aborted for "invalid sample." (R.R. at 77a). Officer Calcagni explained that the machine is programmed to give a licensee three chances to provide two valid samples. Officer Calcagni stated that while Licensee provided a proper sample the first time, on the second and third attempts Licensee did not blow into the machine as hard. Officer Calcagni stated that he informed Licensee that if he failed to provide a valid second sample, it would be considered a refusal.

Following the conclusion of the testimony, Licensee raised numerous arguments as to why his licensee suspension should be deemed invalid.[2] Licensee argued that the

---

1. Officer Calcagni did not provide documentary proof of the calibration.

2. Licensee did not testify at the hearing.

arresting officer, Officer Markunas, did not properly identify Licensee at the preliminary hearing before the magisterial judge; that Officer Markunas failed to fully state the implied consent warning and accompany Licensee to the station; that Officer Markunas did not have the authority to arrest Licensee as the arrest did not occur within his jurisdiction; that evidence was not presented establishing that Officer Markunas was authorized to work at the DUI checkpoint; and, that sufficient evidence was not presented regarding the certification of the Intoximeter operator or of the calibration of the machine.

Following the hearing, the trial court issued an opinion granting Licensee's appeal from the suspension of his driver's license. The trial court determined that it was not established that Officer Markunas had the authority to arrest Licensee in Upper Darby Township. The trial court noted that Officer Markunas merely testified that another officer, who was also not associated with Upper Darby Township, asked him to participate in the DUI checkpoint. As such, the trial court determined that the record was devoid of evidence that Officer Markunas had any authority to initiate an arrest in Upper Darby Township.

DOT now appeals the trial court's ruling to this Court.[3] DOT challenges the trial court's determination that Licensee's arrest was not valid. DOT also argues that the legality of the arrest is immaterial in a suspension appeal. In its appeal to this Court, DOT further raises issues as to whether Licensee was adequately identified by the arresting officer and whether sufficient evidence involving the Intoximeter operator and calibration of the machine

was presented. As the trial court did not make a determination as to these issues, they are not yet ripe for review and we will not consider them at this time. *See Texas Keystone Inc. v. Pennsylvania Department of Conservation and Natural Resources*, 851 A.2d 228 (Pa.Cmwlth.2004).

Additionally, Licensee has filed a cross-appeal with this Court. Licensee presumably is not dissatisfied with the trial court's ruling as said ruling was in his favor. However, as noted by the trial court, Licensee apparently wants this Court to grant his appeal on the basis of every legal argument that was raised before the trial court. Pursuant to Pa. R.A.P. 501, a cross-appeal may only be filed by an aggrieved party. As Licensee was not aggrieved by the trial court's order, his appeal is hereby ordered quashed, without prejudice. Further, the issues raised by Licensee in his cross-appeal involve the identification of Licensee by the arresting officer, the certification of the Intoximeter operator and the calibration of the machine. As discussed above regarding DOT, these issues were not decided by the trial court. Therefore, these issues are not ripe for review in the appeal presently before this Court.

In its appeal to this Court, DOT first alleges that the trial court erred in ruling that Officer Markunas was the arresting officer. DOT argues that when Officer Blohm directed Licensee to drive into the parking lot, he was exercising sufficient control and custody over Licensee to constitute an arrest.

An investigative detention, know as a "Terry stop," subjects a person to a period of detention, without such coercive

---

**3.** Our scope of review in a driver's license suspension case is limited to determining whether the findings of the trial court are supported by competent evidence, whether errors of law were committed or whether there has been a manifest abuse of discretion. *Department of Transportation v. Gross*, 146 Pa.Cmwlth. 1, 605 A.2d 433 (1991).

conditions as to be deemed an arrest. *Commonwealth v. Douglass,* 372 Pa.Super. 227, 539 A.2d 412, 418 (1988), *petition for allowance of appeal denied,* 520 Pa. 595, 552 A.2d 250 (1988); *see also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In order to establish that a stop is custodial in nature, rather than merely an investigative detention, and so coercive as to constitute the functional equivalent of an arrest, we consider as follows:

> [T]he basis for the detention (the crime suspected and the grounds for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions.

*Douglass,* 539 A.2d at 421.

■ The United States Supreme Court has concluded that a licensee is not in custody when he is stopped by a police officer, asked questions and requested to perform balancing tests. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Custodial detention involves more than the mere restriction of a licensee's movement. *Douglass,* 539 A.2d at 419. "To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion." *Commonwealth v. Strickler,* 563 Pa. 47, 58, 757 A.2d 884, 889 (2000). The police may also move the site of an investigative detention in response to security and safety concerns. *Commonwealth v. Revere,* 585 Pa. 262, 888 A.2d 694 (2005).

■ In the present case, Officer Blohm stopped Licensee, noticed that he exhibited signs of alcohol use and directed him to park in a nearby lot. By Officer Blohm's own account, he did not have any further contact with Licensee and did not arrest him. Officer Blohm then informed Officer Markunas that Licensee smelled of alcohol. Officer Blohm did not instruct Officer Markunas as to what should be done with Licensee and left Licensee with Officer Markunas. As such, Officer Blohm's actions toward Licensee were merely investigative in nature and not so coercive as to constitute the functional equivalent of an arrest.

DOT next alleges that even if Officer Markunas was the arresting officer, he was authorized to make an arrest outside of his jurisdiction pursuant to Section (a)(3) and (5) of what is commonly referred to as the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S. § 8953(a)(3) and (5). The MPJA provides as follows:

> **(a) General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:
>
> (1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant

shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.
(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.
(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.
(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.
(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.
(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S.A. § 8953(a)(1)-(6).

■ We agree with DOT that Officer Markunas is authorized to make an arrest outside of his jurisdiction pursuant to Section (a)(3) or (5) of the MPJA where aid has been requested or he is on official business. However, at the hearing before the trial court, DOT failed to introduce any evidence sufficient to meet either of these standards.

Officer Markunas testified that he was asked by Officer Fuller, of the Brookhaven Borough Police Department, to work at the DUI checkpoint in Upper Darby Township. As Officer Fuller was not established to have any authority in Upper Darby Township, we cannot accept Officer Markunas's testimony that Officer Fuller provided him with the proper authorization. Officer Markunas also did not establish that he was on official business at the time of the arrest as he did not provide any evidence that he was authorized to conduct business in Upper Darby Township at the time of the arrest.

■ Finally, DOT argues that even if Officer Markunas did not have the authority to arrest Licensee, the legality of the arrest is irrelevant in a case involving a suspension for refusing chemical testing. In *Martin v. Department of Transportation, Bureau of Driver Licensing*, 588 Pa. 429, 905 A.2d 438 (2006), the Pennsylvania Supreme Court determined that a municipal officer acting outside of his jurisdiction, without statutory authority, was without authority to implement the implied consent warnings. DOT argues that this case is distinguishable from *Martin* because the chemical testing was done by Officer Calcagni and Officer Calcagni was authorized

to read the implied consent warnings and conduct the test. We disagree.

In order to suspend a licensee's operating privileges pursuant to 75 Pa.C.S. § 1547(b), DOT has the burden of proving the following:

> 1) the licensee was arrested for violating Section 3802; 2) by a police officer who had reasonable grounds to believe that the license was operating a vehicle while in violation of Section 3802; 3) that the licensee was requested to submit to a chemical test; 4) that the licensee refused to do so; and 5) that the police officer fulfilled the duty imposed by 75 Pa.C.S. § 1547(b)(2) by advising the licensee that his operating privileges would be suspended if he refused to submit to chemical testing. . . .

*Quick v. Department of Transportation, Bureau of Driver Licensing,* 915 A.2d 1268, 1270 (Pa.Cmwlth.2007). As such, in order to suspend a licensee's operating privileges, DOT has the burden of proving that the licensee was arrested by a police officer who had reasonable grounds to believe licensee was DUI.

In *McKinley v. Department of Transportation, Bureau of Driver Licensing,* 576 Pa. 85, 838 A.2d 700 (2003), the Pennsylvania Supreme Court rejected this Court's determination that a person could be considered a police officer, even if he was acting outside of his jurisdiction, as long as he was an "officer in fact," i.e., authorized with the power to arrest in another jurisdiction. Instead, the Pennsylvania Supreme Court determined that a police officer acting outside of his jurisdiction lacked the ability to act as a police officer and would not be treated as such. *McKinley,* 576 Pa. at 94, 838 A.2d at 706.

As Officer Markunas did not have the authority to act as a police officer, DOT has failed to establish that Licensee was arrested by a police officer who had rea-

sonable grounds to believe Licensee was DUI. Thus, we conclude that the trial court did not err in granting Licensee's appeal from the suspension of his operating privilege. Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 20th day of March, 2008, the cross-appeal of Robert F. Taylor is quashed and the order of the Court of Common Pleas of Delaware County is affirmed.